[907 NYS2d 577]

ALBERT ALFIERI, as Administrator of the Estate of JEAN ALFIERI, Deceased, Plaintiff, v CARMELITE NURSING HOME, INC., Defendant.

Civil Court of the City of New York, Richmond County, August 10, 2010

## APPEARANCES OF COUNSEL

*Bosco, Bisignano & Mascolo*, Staten Island, for plaintiff. *Kral, Clerkin, Redmond, Ryan, Perry & Girvan, LLP*, Smithtown, for defendant.

## OPINION OF THE COURT

ORLANDO MARRAZZO, JR., J.

This is an action for personal injuries. Plaintiff Jean Alfieri suffered injuries when she fell on August 9, 1999 while under the care and supervision of defendant and its employees as a resident of their facility. Ms. Alfieri was nearly 91 years young at the time of her fall. Her impact with the floor resulted in a fractured hip which required surgery and an extended hospital stay. Ms. Alfieri passed away on May 3, 2000 and her estate through Mr. Albert Alfieri, as administrator of the estate of Jean Alfieri, has continued this action against Carmelite Nursing Home. The case was originally filed in State Supreme Court in Richmond County on November 29, 1999. Pursuant to CPLR 325 (b), this case was transferred to New York City Civil Court, Richmond County, where it is currently situated.

Plaintiff moved to compel defendant to supply discovery. The parties herein have resolved by way of a so-ordered two-attorney stipulation all matters of discovery with the exception of discovery as it pertains to any reeducation of defendant's nurse who tended to the needs of the late Ms. Alfieri. Plaintiff seeks the production of Ms. Claudia Perry, a former nurse employed by defendant, for deposition by plaintiff's counsel to discuss her involvement in the incident taking place on August 9, 1999. Specifically, plaintiff's counsel wishes to depose Ms. Perry about any additional training she was required by her employers to undergo following the incident. Defense counsel objected to the motion during oral argument, based on the exclusionary doctrine of subsequent remedial action, and therefore any testimony she may give to that issue is not discoverable.

The Court of Appeals of the State of New York has consistently held for over 120 years that any post-accident modification or repairs made in an appliance, structure, or machine which caused an accident is neither evidence nor an admission of negligence. (*Weiner v Serps Auto Wreckers*, 24 NY2d 845 [1969] [holding that evidence of repairs made by the defendant city at the site of the defect in the road allegedly causing the accident was inadmissible to demonstrate its negligence]; *Cahill v Kleinberg*, 233 NY 255, 260 [1922] [holding that plaintiff's counsel's process of introducing evidence of post-accident remedy via his introduction of a photo of the area, and subsequent rebuttal of it correctly showing the condition of the staircase at the time of the accident, due to the installation of a handrail, was "a persistent violation of perfectly well-understood rules to

which he should have yielded obedience," and therefore reversing the lower court's decision due to its use of inadmissible evidence, even in light of the rule forbidding it].)

Furthermore, the Court of Appeals has determined subsequent remedial measures cannot be used to demonstrate defendant's knowledge of an unsafe condition prior to the accident, thus creating a duty to take reasonable steps to warn against or prevent injury. (*Corcoran v Village of Peekskill*, 108 NY 151 [1888] [holding evidence of a fence built around an opening in a street maintained by defendant city, following plaintiff's injury from falling into the opening, does not prove defendant had knowledge of the imperfection or unsafe condition prior to the accident].)

Subsequent repairs "have no legitimate bearing upon either the defendant's negligence or knowledge of conditions . . . [Their] natural tendency is to prejudice and influence the minds of the jury against [the defendant]." (*Fraumberg v Schmohl*, 190 NYS 710, 711 [App Term, 1st Dept 1921] [holding that acts subsequent to the occurrence have no legal significance to the case]; *Di Paolo v Somma*, 111 AD2d 899, 900 [2d Dept 1985].) Negligence can only be determined by what was known before and at the time of the accident, and cannot be inferred from subsequent acts. (*Quinn v City of New York*, 145 App Div 195, 197 [1st Dept 1911]; *Dougan v Champlain Transp. Co.*, 56 NY 1, 8 [1873].)

The issue before this court is whether post-accident training of an employee is admissible to show negligence on the part of the employer. The court must presently determine if employee training is a remedial repair, and therefore inadmissible to demonstrate evidence of defendant's antecedent negligence.

## To Discover or Not to Discover; That is the Question

It is well recognized that "New York has long favored open and far-reaching pretrial discovery." (*DiMichel v South Buffalo Ry. Co.*, 80 NY2d 184, 193 [1992].) CPLR 3101 (a) states, "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof" (*see Northway Eng'g v Felix Indus.*, 77 NY2d 332, 335 [1991]). The words "material and necessary" as used in the statute are to be interpreted liberally to require disclosure, when requested, of any facts or other information bearing on the controversy which will aid in the preparation for trial by sharpening the issues. (*Anonymous v High School for*

*Envtl. Studies*, 32 AD3d 353, 358 [1st Dept 2006], citing *Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406-407 [1968]; *Roman Catholic Church of Good Shepherd v Tempco Sys.*, 202 AD2d 257, 258 [1st Dept 1994].)

However, evidence that may be material to the prosecution of a case has been held to be undiscoverable if it would be inadmissible at trial, even if disclosed. (*Wood v Bartholomew*, 516 US 1, 6 [1995] [reversing the Ninth Circuit Court of Appeals' ruling, in a per curiam opinion citing the views of Chief Justice Rehnquist and Justices O'Connor, Scalia, Kennedy and Thomas, holding that the prosecution's failure to disclose results of a polygraph test administered to a witness did not violate the defendant's right to due process due to the fact that the results, undisputedly, were inadmissible at trial, and therefore would not have resulted in a different outcome at trial].) The United States Supreme Court narrowed its holding in *Brady v Maryland* (373 US 83 [1963]) to apply to exculpatory evidence that was required to be disclosed to defendant by the prosecution where it was favorable to the defense, and not the other way around. (516 US at 6; *see also People v Shulman*, 172 Misc 2d 535, 541 [Suffolk County Ct 1997]; *People v Parsons*, 13 AD3d 1099 [4th Dept 2004], *lv denied* 4 NY3d 801 [2005].)

## Subsequent Remedial Conduct

After an accident has occurred, the defendant may find it in its own best interest, and the interests of its customers, to take additional precautions to prevent future accidents. Federal Rules of Evidence rule 407 states,

> "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, [product defect], a defect in a product's design, or a need for a warning or instruction."

"The Federal Rule of Evidence is essentially in accord with New York law" (2-5 Bender's New York Evidence § 5.17 [4] [g]). In New York, the general rule is that when, after the event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of those subsequent measures is not admissible to prove negligence or culpable conduct. "The reason for the general rule is that a person may have exercised all the care the law requires and, in the light of

new experience after an unexpected accident has occurred, and as a measure of extreme caution, may adopt additional safeguards." (*Id.* § 5.17 [4] [a].) The Advisory Committee on Rules Notes following rule 407 state, however, that "[e]xclusion is called for only when the evidence of subsequent remedial measures is offered as proof of negligence or culpable conduct."

The United States Supreme Court has held for over a century that admission of subsequent remedial measures is inappropriate due to the fact that the taking of precautions against future harms is not to be implied as an admission of guilt or responsibility, and it has no legitimate tendency to prove that the defendant has been negligent before the incident occurred, and is intended to distract the jury and create a prejudice against the defendant. (*Columbia & Puget Sound R. Co. v Hawthorne*, 144 US 202 [1892] [reversing the appellate court's affirmation of the admission of a change in the design of a trimmer—that had it been made prior to the accident it would have been able to prevent plaintiff's injury—because it was unable to determine just how much the evidence influenced the jury's verdict for plaintiff].) The New York Court of Appeals held in *Engel* that information relating to the issue of whether or not a discharged employee was terminated due to his negligence was inadmissible, as it would "improperly influence the minds of the jury." (*Engel v United Traction Co.*, 203 NY 321, 324-325 [1911] [holding the testimony regarding the employee motorman's discharge after an accident, and any acts by the motorman following and disassociated from the accident, was immaterial].)

## Exceptions for Admissibility

Although not admissible to show negligence, evidence of subsequent remedial measures may be admitted into evidence, with appropriate instructions, to prove other issues. (*Barry v Manglass*, 55 AD2d 1 [2d Dept 1976].) Post-accident conduct is admissible when plaintiff is raising an issue of defendant's control and domain over the cause of the accident. (*Scudero v Campbell*, 288 NY 328, 329 [1942] [holding that an act of repair done after the injury may be shown to demonstrate an act of control over the dangerous condition by defendant, and is therefore material and necessary in the prosecution of the matter (citing 2 Wigmore, Evidence § 283, at 158 [3d ed])]; CPLR 3101 [a]; *see also Hughes v Cold Spring Constr. Co.*, 26 AD3d 858, 859 [4th Dept 2006].)

Evidence of post-accident conduct has further been ruled admissible: (1) to show conditions at the time of the accident

(*Stone v Town of Poland*, 30 NYS 748 [Sup Ct 1894]; *Hillesum v City of New York*, 4 NYS 806 [1889]); (2) to help identify the cause of an injury (*Brennan v Lachat*, 14 Daly 197 [Ct of Common Pleas 1887]); and (3) to rebut or impeach a witness (*Bush v Delaware, Lackawanna & W. R.R. Co.*, 166 NY 210 [1901]; *Di Paolo v Somma*, 111 AD2d 899, 900 [2d Dept 1985]). Evidence of customary precautions taken at the place of the accident frequently has been held admissible to demonstrate defendant's negligence at the time of the accident for which recovery is sought. (*Casey v New York Cent. & Hudson Riv. R.R. Co.*, 78 NY 518, 523 [1879]; *McGrath v New York Cent. & Hudson Riv. R.R. Co.*, 63 NY 522, 525 [1876]; *Heimer v Stento*, 270 App Div 665 [3d Dept 1946].) Taking the facts and circumstances of the case at hand, none of these exceptions appear to be relevant or applicable to this matter.

## Looking to Sister Jurisdictions for Direction

While there is case law in New York that demonstrates the court's adherence to federal rule 407 and exercising its power of "broad discretion in supervising the scope of disclosure" (*Bloss v Ford Motor Co.*, 126 AD2d 804, 805 [3d Dept 1987]), by excluding evidence of post-accident conduct, the issue of whether additional training of an employee qualifies as a "post remedial repair" of the employee and therefore is inadmissible at trial appears to be one of first impression in the New York jurisdiction. This court has been unable to uncover any New York cases, state or federal, directly on point through its search of case law, treatises, journals, and court filings.

Looking to jurisdictions outside of New York for guidance, we are able to find both federal and state cases dealing with the issue of retraining, discipline, or discharge of employees and treating them as subsequent remedial actions. Both the Sixth and Ninth Circuits have recently held that post-incident acts taken by employers against current or former employees, including counseling, training, and additional testing of employees, all rise to the level of disciplinary actions taken in an attempt to prevent repeat incidents in the future, and are therefore inadmissible as they would prejudice defendants by leading the jury to conclude that the employees were acting negligently and/or improperly. (*Prue v University of Wash.*, 2009 WL 1174455, *2-3, 2009 US Dist LEXIS 40972, *6-7 [WD Wash 2009]; *Osborne v Pinsonneault*, 2009 WL 1046008, *3, 2009 US Dist LEXIS 33957, *9-10 [WD Ky 2009] [holding "post-accident

personnel actions, i.e. counseling, supplemental training, additional road test, and six month disciplinary probation, are not relevant to prove the negligence of (defendant employee) or the negligent entrustment, training or supervision by (defendant employer) of (their employee) prior to the accident in question"].) The District Court of Massachusetts in the First Circuit has held that evidence showing the defendant had discharged its employee following an accident with one of its buses or required him to undergo additional safety training "would fall squarely within the rule excluding evidence of subsequent remedial measures." (*Hochen v Bobst Group, Inc.*, 193 FRD 22, 24 [D Mass 2000].)

In a wrongful death action brought on behalf of a pedestrian struck and killed by a bus operated by defendant transit authority, the Appellate Court of Illinois did not dispute that evidence of the driver's subsequent suspension, discipline, and retraining would be inadmissible as proof of a subsequent "remedial measure." (*Pearl v Chicago Tr. Auth.*, 177 Ill App 3d 499, 503, 532 NE2d 439, 442 [1st Dist 1988] [affirming admission of a post-accident report of the driver's ability to operate the bus safely, as well as his violations and retraining, due to the court's "difficulty (in) understanding why the general rule prohibiting testimony of subsequent remedial measures should obtain in this case as the reason for the rule, the likelihood of discouraging the undertaking of safety measures, would seem obviated by mandated (transit authority) policy," and because it contained evaluations of the driver's ability to operate his bus safely at the time of the accident].)

Evidence of the arrangement of remedial steps prior to the accident at issue, to be completed after the accident, may render the general rule inapplicable. Ruling that the trial court did not err in its admission of the hospital's contract to install handrails on the staircase, a court observed that the general rule is based on the need to protect, and encourage repairs by owners who are first alerted by the happening of the accident to the possibility of danger and additional injuries. (*Priolo v Lefferts Gen. Hosp*, 54 Misc 2d 654, 656-657 [Sup Ct, Kings County 1967].) The court held that it could not logically apply the policy argument when defendant had contracted for the remedial actions prior to the accident at issue; therefore the accident could not have been the initial warning of the dangerous condition. This situation of prior arrangement and subsequent completion of remedial steps appears to be rare, and does not apply to our analysis of the current issue.

The court is only able to discover one case, outside the exception provided for in strict liability actions, where evidence of post-accident remedial actions was permitted to demonstrate defendant's negligent care of his front porch. The Supreme Judicial Court of Maine held that Maine Rules of Evidence rule 407 (a) declares evidence of remedial measures admissible to show negligence. (*Herrick v Theberge*, 474 A2d 870, 874 [Me 1984] [holding that the testimony revealed evidence that "tended to show negligence on the part of defendants through their failure to maintain the steps free from ice and to provide a proper railing, as well as through the remedial efforts undertaken by them after the accident"].) However, this court feels compelled to follow the direction of the majority of other jurisdictions holding evidence of subsequent remedial actions to be inadmissible.

## Analysis

There can be little doubt that plaintiff is attempting to use evidence of reeducation by defendant of its employee following plaintiff's decedent's accident to prove either defendant's purported negligence and/or its culpable actions. This conduct is specifically prohibited by Federal Rules of Evidence rule 407. The court finds the circumstances of this case insufficient grounds to not follow the general public policy of New York, as well as the majority of its sister jurisdictions, in holding that admission of subsequent remedial training of an employee is inadmissible to show the employee's negligence or the employer's negligent control over said employee. It would work against logic to punish defendants for taking precautions and making repairs with the hindsight of injury, and rely on them to have sufficient foresight to predict any and all possible accidents.

Furthermore, although plaintiff does not allege that Ms. Perry was terminated due to her negligence, any testimony of a finding by defendant that its employee required additional training could be construed by a jury as an admission by defendant that it was negligent in the maintenance and supervision of its employee and her training at the time of the incident. This would result in an unfair prejudice towards the defendant. The Court of Appeals in *Engel* found immaterial to the case the reason for the employee's discharge and, by analogy, whether or not Ms. Perry received additional training following the incident is also inadmissible.

In following the Supreme Court's holding in *Wood*, the court is obligated to find that any evidence that is inadmissible at

trial is also undiscoverable pretrial. (*Wood*, 516 US at 6.) While plaintiff may later decide to use any other information obtained from Ms. Perry, his sole argument in this manner is to question her only as to any applicable "re-education" she received following the incident. There is no doubt this information is to be used to demonstrate defendant's negligence in the matter, and is therefore inadmissible at trial, and subsequently undiscoverable. The court is unwilling to provide the transportation on plaintiff's fishing expedition without a proper, and admissible, showing of cause.

As none of the aforementioned exceptions to the general rule apply to the undisputed facts of the case at hand, the court feels that ignoring the general rule and permitting evidence of any retraining or reeducation of the nurse would not only prejudice a jury, but also further discourage the undertaking of safety measures with full hindsight of dangerous conditions. By permitting this evidence to be admitted, the court would be breaking from the majority public policy in finding that remedial measures should be taken just as often with hindsight as with foresight. This goes against the well-settled and time-tested public policy of New York, and the majority of other jurisdictions around the country. That is something this court does not feel compelled under the current situations and facts presented by this case to do.

For the reasons stated above, it is ordered that plaintiff's motion to compel production of Ms. Perry and/or any information regarding her reeducation is denied.